UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

MANUEL DOMINGO P. DELGADO,

Petitioner,

v.

ERNESTO SANTACRUZ, JR.,
Acting Field Office Director for
Immigration and Customs
Enforcement and Removal Operations
in Los Angeles, et al,

Respondents.

Case No. 5:26-cv-02878-DTB

**ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS**

**I.**

**PROCEEDINGS**

On May 27, 2026, petitioner Manuel Domingo P. Delgado ("Petitioner"), through counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), along with twelve supporting exhibits (Docket No. at 15-62).[1]

/ / /

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

1

The Petition alleges the following claims for habeas relief: (1) Petitioner's detention violates his right to procedural due process under the Fifth Amendment on the basis of his status as an applicant for U-Visa deferred action protection; (2) Petitioner's prolonged detention violates his right to procedural due process under the Fifth Amendment, as he has two pending basis for relief from removal; and (3) Petitioner's arrest and detention when he appeared for a biometric appointment relating to his U-Visa status violated the Immigration and Nationality Act ("INA"), as well as the Constitution. (Docket No. 1 at 9-12).

On June 3, 2026 (pursuant to General Order 26-05 and Briefing Schedule, see Docket No. 4 at 2, 5), Respondents filed an Answer to the Petition ("Answer"). (Docket No. 8). In the Answer, Respondents do not address the merits of the Petition and state that they "are not presenting an opposition argument at this time. Should the Court enter relief, judgment may be entered, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the General Order, no more filings or proceedings will be necessary in this matter." (Answer at 2).

On June 4, 2026, Petitioner filed a Reply ("Reply") noting that Respondents did not oppose the granting of the petition and that Petitioner has established irreparable harm, as his liberty remains restrained while he remains detained. (Reply at 2). Petitioner attests that Respondents' failure to present any opposition further reinforces this conclusion. Petitioner respectfully requests that the Court order his immediate release and prevent Respondents from requiring Petitioner to place an ankle monitor, and order Respondents to return all the personal belongings of Petitioner, including, but not limited to, work permit, social security card, driving license. (Id.).

Thus, this matter is now ready for decision. For the reasons set forth herein, the Court grants Petitioner's request for habeas relief.

/ / /

2

## II.

## BACKGROUND[2]

Petitioner is a national and citizen of Guatemala. (Petition, Exhibit A, Petitioner's Birth Certificate). Petitioner initially came to the United States on an unknown date and was placed in expedited removal proceedings in 2013 and 2014. (Petition, ¶18). Petitioner re-entered the United States again to join his wife and their United States citizen children, who were residing in the United States. (Id.). Following his return to the United States, Petitioner was the victim of a criminal assault in which he sustained injuries. (Id.). As a result of this criminal attack, Petitioner became eligible for U-Visa status, which would enable him to remain in the United States despite his final removal order. (Id.). Petitioner asserts that an alien who is the subject of a final order of removal, deportation, or exclusion is not precluded from filing a petition for U-1 nonimmigrant status directly with United States Citizenship and Immigration Services ("USCIS"). See 8 C.F.R. § 214.14 (c)(i)(ii). (Id.).

Pursuant to INA § 101(a)(15)(U), 8 U.S.C. § 1101(a)(15)(U), Petitioner filed a U-Visa application as a result of the criminal assault he suffered, since battery is a crime that provides a basis for a U-Visa. (Petition, ¶19; Exhibit B, Police Report). Petitioner, with the assistance of prior counsel, was able to submit a U-Visa application, which is still pending with the USCIS. (Petition, Exhibit C, Declaration of Petitioner in Support of his U-Visa; Exhibit D, U-Visa receipt by the USCIS dated February 2026).

Petitioner was scheduled for a biometrics appointment relating to his U-Visa application on or about May 12, 2026. (Petition, ¶20). Petitioner appeared with his United States citizen daughter to assist him in communicating with officers. (Id.;

---

[2]    The Background is based on the allegations in the Petition.

Exhibit E, Biometrics appointment for U-Visa).  After completing his biometrics appointment, Petitioner was instructed to wait at the application support Center, where he was arrested and detained by Immigration and Customs Enforcement ("ICE") without any prior notice or knowledge.  (Id.; Exhibit F, Declaration of Petitioner).

Petitioner has also filed a stay of his removal that is currently pending for approval.  (Petition, ¶ 21; Exhibit G, Stay of Removal Request).  Petitioner alleges that his U-Visa application is an exercise of prosecutorial discretion that makes Petitioner a lower priority for removal.  (Id.).

The William Wilberforce Trafficking Victims Reauthorization Act of 2008 (TVPRA 2008), signed into law on December 23, 2008, amended the INA to provide Department of Homeland Security ("DHS") with discretion to grant employment authorization to an alien who has a pending, bona fide petition for U nonimmigrant status.  (Petition, ¶22).

Petitioner contends that he is a bona-fide U-Visa applicant.  (Petition, ¶23). He also asserts that he is not a flight risk, as he has strong ties to the United States, since all his children are United States citizens.  (Id.; Exhibit H, Birth Certificates of Petitioner's Daughters).  Petitioner is also the sole provider for his wife and children(id.; Exhibit I, Employment Verification), and is active in his children's lives. (Id.; Exhibit J, Letter from School Describing Petitioner's Involvement as a Parent).

Petitioner also has close extended family members in the United States. (Petition, ¶25).

### III.

### LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const.,

Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . .." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## IV.

## DISCUSSION

**A.    Petitioner is entitled to Habeas Relief.**

Given their election not to oppose the merits of the claims in the Petition, the Court finds that Respondents have consented to the facts and arguments raised therein pursuant to Central District of California Local Civil Rule 7-12.

6

Accordingly, the Court considers the facts and contentions alleged by Petitioner to be unopposed.[3]

Here, Petitioner alleges a history of living in the United States since at least approximately 2013, and that he is the father of four United States Citizen children. (Petition, ¶¶18, 23; Exhibit C, Declaration of Petitioner in Support of his U-Visa). He is the sole provider for his family, which depends on him for both financial and emotional support. (Id., at ¶¶23, 24). Moreover, Petitioner was the victim of a criminal physical assault, in which he sustained injuries, and which is the basis for his pending application for U-Visa status. (Petition, Exhibit C, Declaration of Petitioner in Support of his U-Visa). On May 12, 2026, after appearing for a biometrics interview for his U-Visa application, he was arrested and detained by ICE agents. (Id., ¶20).

The Court now considers Petitioner's claim concerning the deprivation of his due process rights pursuant to Mathews.

Given Respondents' lack of opposition and concession to Petitioner's version of the facts, the Court finds that habeas relief is warranted on the basis that Respondents have violated Petitioner's right to procedural due process.

Petitioner has a substantial liberty interest in remaining out of custody based on the life he built in the United States since arriving, in particular with regard to his pending U-Visa application. As Petitioner points out, Congress enacted the U-Visa program as a means of protecting noncitizens who were victims and/or witnesses in criminal proceedings. Petitioner's liberty interest extends to his status as a U-Visa applicant, to be free to pursue the potential benefits of this program which Congress has seen fit to enact. See, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal.

---

[3]    Respondents' non-opposition, in itself, can serve as a basis to grant the Petition. See Orozco v. Warden, Adelanto Detention Facility, et al., Case No. 5:26-cv-02385-BFM; Docket No. 14 at 2 (citing cases).

Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

In light of Petitioner's substantial liberty interest, his arrest by immigration authorities on May 12, 2026, without notice or a pre-deprivation hearing, violated his procedural due process rights. See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Respondents have offered no reason – much less any compelling reason – as to why the government should be able to detain Petitioner under these circumstances, Petitioner has demonstrated a significant liberty interest in pursuing his pending U-Visa application, as well as engaging in the life he has established in the community and supporting his family – including his four daughters, all of whom are U.S. citizens. Petitioner appears to pose no danger to his community or risk of flight, yet

Respondents have detained him without first providing him either notice and opportunity for a hearing before a neutral adjudicator. Respondents' arrest and detention of Petitioner has significantly impeded – if not eliminated – his liberty interest, including his ability to pursue his lawful U-Visa application.

Accordingly, the Court concludes that the government's arrest and detention of Petitioner on May 12, 2026, without adequate pre-detention process, violated his right to procedural due process under the Fifth Amendment.

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody without conditions, which was his status prior to his current unlawful detention. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

In addition, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020)

("Accordingly, this court will join the consensus view among District Courts concluding that ... where ... the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

In sum, the Court concludes that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is not subject to mandatory detention under § 1225(b)(2).  See Maldonado Bautista, 2025 WL 3678485, at *1.  Moreover, Petitioner is entitled to an individualized bond hearing pursuant to 8 U.S.C. § 1226(a).[4]  See id.  However,

---

[4]   The fact that Petitioner could receive a post-deprivation bond hearing while in custody does not remedy the violation of Petitioner's procedural due process rights.  See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").  Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's

Petitioner is also entitled to immediate release from custody based on the violation of his procedural due process rights, as explained above. The statutory basis of Petitioner's detention may become relevant to any future determination of Petitioner's suitability for parole, should he be detained in the future.

**V.**

**CONCLUSION**

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) that a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner, Manuel Domingo P. Delgado (A 088-513-370), from custody on the same conditions (if any) imposed as of the time of his current arrest and detention, and return all property confiscated from him during processing into detention; (3) that Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them are enjoined from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (4) that Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: June 18, 2026

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

---

continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana-Rivera v. Johnson, No. EDCV 26-2116-HDV-AJR, Dkt. 18 at 2 & n.2 (internal quotation marks omitted) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)).

11